1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JOYCE COTTON LACY,              )   NO. EDCV 08-01270 SS
                                     )
12                  Plaintiff,       )
                                     )
13        v.                         )   **MEMORANDUM DECISION AND ORDER**
                                     )
14   MICHAEL J. ASTRUE,              )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16                  Defendant.       )
     _____)
17

18

19                        **INTRODUCTION**

20

21        Joyce Cotton Lacy ("Plaintiff") brings this action seeking to

22   overturn the decision of the Commissioner of the Social Security

23   Administration (hereinafter the "Commissioner" or the "Agency") denying

24   her application for Supplemental Security Income ("SSI").  The parties

25   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

26   undersigned United States Magistrate Judge.  This matter is before the

27   Court on the parties' Joint Stipulation ("Jt. Stip.") filed on July 9,

28   2009.  For the reasons stated below, the decision of the Commissioner

     is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on July 13, 2006. (Administrative Record ("AR") 82). Plaintiff listed June 23, 2006 as the onset date of her disability. (AR 83). The Commissioner initially denied benefits on September 8, 2006 and again upon reconsideration on December 28, 2006. (AR 17). Plaintiff requested a hearing before an administrative law judge ("ALJ") on January 15, 2007. (AR 43).

On October 31, 2007, Plaintiff's hearing proceeded before ALJ Charles E. Stevenson.[1] (AR 5, 23). The ALJ rendered an unfavorable decision on November 9, 2007. (AR 14). On November 19, 2007, Plaintiff requested Appeals Council review. (AR 4). The Appeals Council denied Plaintiff's request for review on July 18, 2008. (AR 1). On September 24, 2008, Plaintiff filed the instant complaint.

**FACTUAL HISTORY**

A.   **Generally**

Plaintiff was born on May 11, 1960. (AR 83). Plaintiff's past occupations included work in a donut shop. (AR 89). Plaintiff claims disability stemming from "[h]igh blood pressure,[]arm pain, both knees [being] in pain,[ and] leg pain" (AR 20). Plaintiff claims that these

---

[1] Plaintiff did not attend the hearing because she was "delayed in traffic." (AR 7).

2

disabilities limit her ability to work by causing "[a]rm weakness," and preventing her from "lift[ing] over 10 lbs." (<u>Id.</u>).  Plaintiff further claims that she has to "avoid prolonged standing or bending" because this causes her "knees [to] hurt badly."  (<u>Id.</u>).

**B.  <u>Relevant Medical History</u>**

**1.  Treating Physicians**

In a summary report dated August 30, 2006, Dr. Lilian Chang, M.D. ("Dr. Chang") writes that she performed an internal medicine evaluation on Plaintiff.  (AR 135-39).  Dr. Chang's diagnostic impression of Plaintiff was as follows:

> This 46-years-old, African American female presents with hypertension, hepatitis C, and bilateral knee pain.
>
> Today's evaluation reveals no evidence of acute congestive heart failure.  Her cardiovascular examination is unremarkable and her blood pressure is adequately controlled on medication at 134/82.
>
> On the abdominal examination, there is no tenderness to palpation, rebound, or guarding.  There are no stigmata of liver cirrhosis and no jaundice.

3

> Her musculoskeletal examination is remarkable for tenderness
> to palpation of both knees, limited range of motion, and a
> slow gait.  Her knee x-rays are currently pending.

(AR 138).   Dr. Chang's functional assessment of Plaintiff was as follows:

> With the limited range of motion of the knee joints,
> [Plaintiff] should be capable of lifting and carrying 20
> pounds occasionally and 10 pounds frequently.  Standing and
> walking can be done cumulatively up to four hours of an
> eight-hour day. [Plaintiff] can sit for up to six hours of an
> eight-hour day.   Bending, stooping, crouching, kneeling,
> squatting, and climbing can be done occasionally.  She is not
> limited in using the extremities for pushing, pulling,
> reaching, handling, grasping, or fingering.  There are no
> limitations in terms of hearing, seeing, or speaking.

(AR 139).

In a radiology report dated August 30, 2006, Dr. T. Divakaran, M.D. ("Dr. Divakaran") makes the following findings regarding Plaintiffs left and right knees:

> The bony alignment is normal.  No fractures are seen.  Spurs
> are noted mainly from the lateral articular margins of the
> femur and tibia, tibial spine and minimally from the dorsal
> surface of the patella.   There is tibiofemoral joint space

4

narrowing, more prominent in the medial compartment.  There
is also calcification of the quadriceps tendinous attachment
to the patella.

(AR 140).  Dr. Divakaran's impression of Plaintiff's left and right knees was as follows:

Mild to moderate osteoarthritis.  Calcification, quadriceps
attachment.

(Id.).

In a visual acuity report dated August 30, 2006, a staff member of the Royalty Medical Group indicates that the Plaintiff "can visually move about the office without any help."  (AR 141).

Finally, Plaintiff visited the Arrowhead Regional Medical Center emergency room on November 10, 2006 and December 18, 2006.  (AR 152-53, 57-58).  While these medical records are largely illegible, Plaintiff appears to have been treated for back problems and hypertension.  (Id.).

## 2.   State Agency Physicians

Dr. M. H. Yee, M.D. ("Dr. Yee") reviewed Plaintiff's medical records for the Disability Determination Service ("DDS") and issued a Physical Residual Functional Capacity Assessment on September 6, 2006. (AR 142-48).  Dr. Yee wrote that both of Plaintiff's "knees show mild

to moderate osteoarthritis," that Plaintiff "is extremely obese with BMI approx[imately] 41" and that "[a] sedentary RFC would not be precluded." (AR 146). Dr. Yee indicated that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand or walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. (AR 143). Dr. Yee found that Plaintiff could push and/or pull without limitations and could stand/walk for 4 hours in an 8-hour workday. (Id.). Dr. Yee further found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl and occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (AR 144). Dr. Yee determined that Plaintiff had no manipulative limitations, visual limitations, communicative limitations, or environmental limitations, except that Plaintiff should avoid concentrated exposure to vibration and even moderate exposure to hazards. (AR 144-45). Finally, Dr. Yee wrote that Plaintiff's symptoms were attributable to a "medically determinable impairment." (AR 145).

Dr. M. E. Bayar, M.D. ("Dr. Bayar") reviewed Plaintiff's medical records for the Disability Determination Service ("DDS") and issued a Case Analysis on December 27, 2006. (AR 154-55). Dr. Bayar's findings were consistent with the prior determination by Dr. Yee:

> No additional [medical records] w[ere] rec[eive]d. There doesn't appear to be any significant change in [Plaintiff's] overall condition. Suggest reaffirming prior sedentary RFC.

(AR 155).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him or her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he or she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[2]  Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1520, 416.910.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his or her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

8

<u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.   <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2006.  (AR 19).

At step two, the ALJ found that Plaintiff's severe impairments were "obesity, bilateral knee degeneration, [and] hypertension."  (AR 19).

At step three, the ALJ concluded that Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 19).

At step four, the ALJ found that Plaintiff "ha[d] no past relevant work."  (AR 21).   The ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work except she can lift and carry 20 pounds occasionally, 10 pounds frequently."  (AR 19).   The ALJ further found that Plaintiff could "stand and walk 2 hours in an 8 hour day, sit without restrictions, . . . occasionally climb, balance, stoop, kneel, [and] crouch[,]" but could not climb ladders or work near "unprotected heights" or "hazardous equipment."  (<u>Id.</u>).

The vocational expert ("VE") testified that Plaintiff's past work included being a "fast food worker, donut shop." (AR 9). The ALJ questioned the VE about Plaintiff's earnings as a fast food worker and speculated about whether this work qualified as substantial gainful activity. (Id.). Based on Plaintiff's RFC, the ALJ posed the following hypothetical to the vocational expert ("VE"):

> [A]ssume the following; lifting and carrying light work level 20 pounds occasionally, 10 pounds frequently, standing and walking two out of eight in the day, sitting six hours a day in a day [sic], occasional climbing, balancing, stooping, kneeling, crouching crawling, no ladders, no vibrating tools, no unprotected heights, no hazardous equipment. Past work done?

(AR 10). The VE responded, "No, Your Honor." (Id.).

The ALJ ultimately concluded that Plaintiff's prior work as a fast food worker did not qualify as substantial gainful activity. (AR 21) ("The [Plaintiff] has no past relevant work.").

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (AR 22). The ALJ asked the VE whether "[o]ther work [could] be done within [the above] limitations." The VE responded as follows:

I believe that comes closer to the full range of sedentary work, Your Honor.  Of which there are 137 different occupational titles.  And some examples –

. . . .

– reception information clerks, telephone quotation clerks.  237.367-046.  Unskilled, SVP 2, sedentary in nature.  4,800 in the local economy.  This is the Greater Los Angeles and Orange counties.  98,000 nationally.  The number of general office types jobs, this is a document preparer.  DOT 249.587-018.  Unskilled, sedentary, SVP 2.  3,200 locally.  63,000 nationally.

(AR 10).

Based on the above RFC and the testimony of the VE, the ALJ concluded that Plaintiff could work as a telephone quotation clerk and as a general office worker.  (AR 22).  Accordingly, the ALJ determined that "a finding of 'not disabled' [was] . . . appropriate."  (<u>Id.</u>).

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.

11

1   <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v.</u>

2   <u>Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

3

4       "Substantial evidence is more than a scintilla, but less than a

5   preponderance." <u>Reddick</u>, 157 F.3d at 720.  It is "relevant evidence

6   which a reasonable person might accept as adequate to support a

7   conclusion." <u>Id.</u>  To determine whether substantial evidence supports

8   a finding, the court must "'consider the record as a whole, weighing

9   both evidence that supports and evidence that detracts from the

10  [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny</u>

11  <u>v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

12  reasonably support either affirming or reversing that conclusion, the

13  court may not substitute its judgment for that of the Commissioner.

14  <u>Reddick</u>, 157 F.3d at 720-21.

15

16                              **DISCUSSION**

17

18  **A.   <u>The ALJ Satisfied His Duty To Develop The Record</u>**

19

20      Plaintiff asserts that the ALJ failed to properly develop the

21  record by not "allow[ing] Planitiff to testify at her hearing."  (Jt.

22  Stip. at 4).  This Court disagrees.

23

24      The ALJ has an affirmative duty to fully and fairly develop the

25  record in a social security case.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

26  1150 (9th Cir. 2001).  The duty is heightened when the claimant is

27  unrepresented or is mentally ill and thus unable to protect her own

28  interests.  <u>Id.</u>  However, only ambiguous evidence, or the ALJ's own

                                    12

1  finding that the record is inadequate to allow for proper evaluation of
2  the evidence, triggers the ALJ's duty to conduct an appropriate inquiry
3  or gather additional information.  <u>Id.</u>; <u>see also</u> <u>Thomas v. Barnhart</u>, 278
4  F.3d 947, 958 (9th Cir. 2002) (duty not triggered where the ALJ did not
5  make a finding that the medical report was inadequate to make a
6  disability determination).

7

8      In this case, the hearing before the ALJ commenced at 9:26 a.m. on
9  October 31, 2007, although it was scheduled for 9:00 a.m.  (AR 7, 71).
10 The ALJ noted that Plaintiff's counsel was present at the hearing, but
11 that Plaintiff was not.  (<u>Id.</u>).  Plaintiff's counsel explained that
12 Plaintiff was "delayed in traffic." (<u>Id.</u>).  Plaintiff's counsel further
13 stated that he called Plaintiff "about a half hour ago or a little bit
14 over a half hour ago," and that "[s]he said she was about a half hour
15 away." (<u>Id.</u>).  The ALJ noted that Plaintiff was "a half hour late" and
16 decided to commence the hearing without her.  (<u>Id.</u>).  The ALJ explained,
17 however, that "[i]f [Plaintiff] shows up, she can continue," but that
18 "[i]f she doesn't show up by the time we're done, well then she can show
19 cause as to why she wasn't here." (AR 7-8).  Plaintiff's counsel
20 responded, "Very good." (AR 8).  Plaintiff never arrived at the
21 hearing.

22

23     The ALJ then proceeded with the hearing and gave Plaintiff's
24 counsel numerous opportunities to represent Plaintiff's interests.
25 First, the ALJ asked Plaintiff's counsel if he had any objections to the
26 exhibits.  (AR 8).  Plaintiff's counsel responded in the negative.
27 (<u>Id.</u>).  Second, the ALJ asked Plaintiff's counsel if he had any
28 additional exhibits.  (<u>Id.</u>) ("Anything pending?).  Plaintiff's counsel

responded in the negative. (Id.). Third, the ALJ asked Plaintiff's counsel if he wanted to give an opening statement. (AR 8-9). Plaintiff's counsel responded in the negative. (AR 9). The ALJ then proceeded to ask questions of the vocational expert.

The ALJ asked Plaintiff's counsel if wanted to question the VE. (AR 10). Plaintiff's counsel responded in the negative. (Id.). Finally, the ALJ asked Plaintiff's counsel if there was "[a]nything else." (Id.). Plaintiff's counsel responded in the negative. (AR 11). The ALJ then closed the hearing. (Id.).

Plaintiff argues that the ALJ should not have conducted the hearing in Plaintiff's absence because "there is no order to show cause in order for the Plaintiff to justify why she did not attend her hearing." (Jt. Stip. at 3) ("[T]he record is void of any order to show cause."). Contrary to Plaintiff's claim, however, the ALJ issued a Notice to Show Cause for Failure to Appear ("Notice to Show Cause") on October 31, 2007, which was mailed to Plaintiff's address of record as well as her counsel. (AR 71-72). The Notice to Show Cause specifically informed Plaintiff that she had the opportunity to explain her absence and that if she could show "good cause," the ALJ would schedule a new hearing. (AR 71). The Notice to Show Cause further informed Plaintiff that she had until November 12, 2007 to provide a written statement. (Id.). Plaintiff failed to file any response to the Notice to Show Cause.

In sum, the ALJ satisfied his duty to develop the record by delaying the start of the hearing and offering Plaintiff's counsel an opportunity to challenge the evidence and question the VE. Furthermore,

14

the ALJ issued the Notice to Show Cause, which allowed Plaintiff the opportunity to explain her absence from the hearing and request a new hearing.  (AR 71-72).  Plaintiff chose not to avail herself of this opportunity.  No remand is necessary.

**B.    The ALJ Properly Considered The Plaintiff's Pain Questionnaire**

Plaintiff asserts that the ALJ failed to properly consider her statements regarding pain in the Pain Questionnaire. (Jt. Stip. at 6). This Court disagrees.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)) (internal quotation marks omitted).  The claimant, however, "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282).  Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

Here, Plaintiff wrote in the Pain Questionnaire that she experiences "[s]harp [and] throbbing" pain "every day" in her "[k]nees [and] legs." (AR 108). Plaintiff explained that "[b]eing on [her] feet causes sharp pains in [her] knees" and that the pain "go[es] to [her] [l]ower [b]ack." (Id.).

In his decision, however, the ALJ provided the following clear and convincing reasons to reject Plaintiff's statements regarding pain:

[Aside from Dr. Chang's internal medicine evaluation in August of 2006,] [t]he [Plaintiff] presented no other significant objective medical evidence of a medically determinable impairment or impairment related limitations. Nonetheless, she maintains she is unable to work due to her alleged subjective symptoms. However, the undersigned notes the [Plaintiff] has not established a medically determinable impairment which would reasonably be expected to produce such limitations. Her hypertension is well controlled without evidence of end-organ damage or other complications. With regards [sic] to her knees, the [Plaintiff] is not described as a surgical candidate, nor is there any evidence she has required extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain. The [Plaintiff] has no abnormalities of gait, nor are any assistive devices required. While the [Plaintiff] asserted a chronic and debilitating pain syndrome of extended

16

duration, it is noted she exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain. There is no credible evidence of regular usage of strong medication to alleviate symptoms that would significantly impair the [Plaintiff's] ability to do basic work activities. There was no evidence in the medical record of any significant side effects.   Accordingly, the undersigned concludes the [Plaintiff's] allegations, although appearing sincere, are not fully credible regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitations and restrictions.

(AR 21).

Plaintiff acknowledges that the ALJ "offered much discussion of [her] statements and testimony," but argues that he "did not properly consider [her] pain testimony."  (Jt. Stip. at 7).  However, as set forth above, the ALJ determined that Plaintiff had failed to present "significant objective medical evidence of a medically determinable impairment or impairment related limitations."  (AR 21).

In addition, the ALJ provided several clear and convincing reasons for rejecting Plaintiff's pain allegations.  First, the ALJ noted that Plaintiff's "hypertension is well controlled without evidence of end-organ damage or other complications."  (Id.).  Indeed, Dr. Chang concluded that Plaintiff's "cardiovascular examination [wa]s unremarkable and [that] her blood pressure [wa]s adequately controlled on medication."  (AR 138).  Second, the ALJ found that there was no

evidence of "extensive or significant forms of treatment commonly prescribed for intense pain." (AR 21). Indeed, the Ninth Circuit has held that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted). Third, the ALJ found that "[t]here [wa]s no credible evidence of regular usage of strong medication to alleviate symptoms that would significantly impair the [Plaintiff's] ability to do basic work activities." (AR 21). Indeed, Dr. Chang wrote in her August 30, 2006 summary report that Plaintiff reported "alleviation of the knee pain by resting or taking Indocin." (AR 135); <u>see also</u> <u>Bunnell</u>, 947 F.2d at 346 (ALJ may consider type, dosage, and effectiveness of pain medication to determine credibility of claimant's allegations). As Plaintiff's alleged pain was alleviated by medication, this was a convincing reason to discount her statements regarding pain.

The Court notes that Dr. Chang specifically took into account the Plaintiff's "limited range of motion of the knee joints" in formulating her functional assessment. (AR 139). Dr. Chang ultimately concluded that Plaintiff could stand and walk "up to four hours of an eight-hour day." (<u>Id.</u>). The ALJ, however, crafted an even more limited RFC, determining that Plaintiff could stand and walk only "2 hours in an 8 hour day." (AR 19). Thus, the ALJ gave some credit to Plaintiff's testimony about her knee pain and appropriated credited this testimony in his more limited RFC.

In sum, the ALJ appropriately considered the Plaintiff's pain testimony by determining that Plaintiff had not presented objective

18

medical evidence of an underlying impairment which could reasonably be expected to produce the pain alleged.   Additionally, the ALJ provided multiple clear and convincing reasons to reject Plaintiff's allegations regarding her level of pain.   Thus, no remand is necessary.

**C.    The Hypothetical Contained All Limitations Supported By Substantial Evidence**

Plaintiff asserts that the ALJ did not pose a full hypothetical to the VE because the hypothetical did not contain limitations based on Plaintiff's pain.  (Jt. Stip. at 20-22).   This Court disagrees.

As set forth above, see supra Part B, the ALJ appropriately considered Plaintiff's pain testimony.  See Osenbrock, 240 F.3d at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.").   Because Plaintiff's subjective claims about her knee pain were contradicted by the objective medical evidence, the ALJ was not required to include limitations based on knee pain in the hypothetical.   See id. at 1164 ("Because [the plaintiff] did not present any evidence that he suffers from sleep apnea, diabetes, organic brain disorder, or hepatitis in support of his disability claim, the ALJ did not err in failing to include these alleged impairments in the hypothetical question posed to the VE.").

Nevertheless, the ALJ's hypothetical incorporated limitations based on Plaintiff's knee pain by stating that the hypothetical worker could only stand and walk "two out of eight [hours] in the day."  (AR 10).

As explained above, see supra Part B, Dr. Chang specifically took into account the Plaintiff's "limited range of motion of the knee joints" and concluded that Plaintiff could stand and walk "up to four hours of an eight-hour day." (AR 139). Thus, the ALJ's hypothetical contained even greater limitations than found by Dr. Chang.

In sum, the Court finds that the ALJ's hypothetical contained all limitation supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had claimed, but had failed to prove."). Thus, no remand is necessary.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 10, 2009.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

_____

[3]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

21